**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAR CHARGING GROUP, INC., a Nevada corporation, | **Civil Action No.: 14-CV-7557 (GBD)** |
| Plaintiff, | |
| v. | |
| GARDEN STATE SECURITIES, INC., a New Jersey Corporation, DANIEL WALSH, an individual, and ERNEST PELLEGRINO, an individual, | **ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS AND THIRD PARTY COMPLAINT ON BEHALF OF DEFENDANTS** |
| Defendants, | |
| _____ | |
| GARDEN STATE SECURITIES, INC., a New Jersey Corporation, DANIEL WALSH, an individual, and ERNEST PELLEGRINO, an individual, | |
| Third-Party Plaintiffs, | |
| v. | |
| WORLDWIDE STOCK TRANSFER. LLC | |
| Third Party Defendant. | |

## ANSWER

Garden State Securities, Inc. ("Garden State"), Daniel Walsh ("Walsh") and Ernest Pellegrino ("Pellegrino") (collectively "GSS") by and through their undersigned counsel, Becker & Poliakoff, LLP, submit the following Answer, Counterclaims and Third Party Claims against Worldwide Stock Transfer, LLC.

## JURISDICTION AND VENUE

1.     GSS admits the allegations contained in Paragraph 1 of the Complaint.

2.     GSS admits the allegations contained in Paragraph 2 of the Complaint.

3.      GSS denies the allegations contained in Paragraph 3 of the Complaint.

4.      GSS denies that Pellegrino is a resident of the State of New Jersey but admit that he is an employee of Garden State.

5.      GSS admits the allegations contained in Paragraph 5 of the Complaint.

6.      GSS admits the allegations contained in Paragraph 6 of the Complaint.

7.      GSS admits the allegations contained in Paragraph 7 of the Complaint.

8.      GSS lacks information sufficient to form a belief as to the allegations contained in Paragraph 8 and leave Plaintiff to its proofs.

9.      GSS lacks information sufficient to form a belief as to the allegations contained in Paragraph 9 and leave Plaintiff to its proofs.

## **INTRODUCTION**

10.      GSS admits the allegations contained in Paragraph 10.

11.      GSS lacks information sufficient to form a belief as to the allegations contained in Paragraph 11 and leave Plaintiff to its proofs.

12.      Denied, except that GSS admits that in or about August 2012, Garden State and plaintiff Car Charging Group, Inc. ("CCG") discussed CCG engaging GSS as a financial advisor.

13.      GSS denies that its representatives made any assurances to CCG, but admits that there were discussions about the types of services GSS and its representatives could provide with respect to potential capital raise and other financial services and introductions.

14.      GSS admits the allegations contained in paragraph 14.

15.      GSS admits the allegations contained in paragraph 15.

16.      GSS admits the allegations contained in paragraph 16.

17.      GSS admits the allegations contained in paragraph 17.

18.     GSS admits the allegations contained in paragraph 18.

19.     Denied, except that GSS admits that the CCG shares issued to GSS contained restrictive legends which prohibited GSS' sale of the subject shares.

20.     GSS denies the allegations contained in paragraph 20, except that GSS admits that one way of having the restrictive legend removed from stock certificates is to initiate a sale of the shares under SEC Rule 144, which requires, *inter alia*, the issuance of a legal opinion letter to the transfer agent authorizing the removal of the legends if, in the opinion of counsel, the shareholders may rely on the Rule 144 exemption for the sale of the shares despite the fact that the share are not registered. GSS also admits that Worldwide Stock Transfer, LLC is the transfer agent for CCG common stock. GSS denies the balance of the allegations contained in ¶ 20.

21.     GSS admits the allegations contained in paragraph 21.

22.     GSS admits that CCG has refused to authorize the release of the CCG shares, but denies the remainder of the allegations contained in paragraph 22.

23.     GSS admits the allegations contained in paragraph 23.

## COUNT I
### (Breach of Contract against GSS)

24.     GSS repeats the answers heretofore stated.

25.     GSS admits the allegations contained in paragraph 25.

26.     GSS admits the allegations contained in paragraph 26.

27.     GSS denies the allegations contained in paragraph 27.

28.     GSS denies the allegations contained in paragraph 28.

29.     GSS denies the allegations contained in paragraph 29.

30.     GSS denies the allegations contained in paragraph 30.

31.     GSS denies the allegations contained in paragraph 31.

32.     GSS denies the allegations contained in paragraph 32.

33.     GSS denies the allegations contained in paragraph 33.

## COUNT II
**(Breach of Implied Covenant of Good Faith and Fair Dealing against GSS)**

34.     GSS repeats the answers heretofore stated.

35.     GSS admits the allegations contained in paragraph 35.

36.     GSS admits the allegations contained in paragraph 36.

37.     GSS admits the allegations contained in paragraph 37.

38.     GSS denies the allegations contained in paragraph 38 and further state that GSS

has fully performed its obligations under the Agreement in all material respects.

39.     GSS denies the allegations contained in paragraph 39.

40.     GSS denies the allegations contained in paragraph 40.

41.     GSS denies the allegations contained in paragraph 41.

42.     GSS denies the allegations contained in paragraph 42.

## COUNT III
**(Unjust Enrichment against GSS, Walsh and Pellegrino)**

43.     GSS repeats the answers heretofore stated.

44.     GSS denies the allegations contained in paragraph 44.

45.     GSS denies the allegations contained in paragraph 45.

46.     GSS denies the allegations contained in paragraph 46.

47.     GSS denies the allegations contained in paragraph 47.

48.     GSS denies the allegations contained in paragraph 48.

## COUNT IV
**(Injunctive Relief against All Defendants)**

49.     GSS repeats the answers heretofore stated.

50.     GSS admits the allegations contained in paragraph 50.

51.     GSS denies the allegations contained in paragraph 51.

52.     GSS admits that in August 2014, GSS contacted Worldwide and requested the removal of the restrictive legend from the CCG shares at issue but denies the remainder of the allegations contained in paragraph 52.

53.     GSS admits that CCG has refused to authorize the removal of the restrictive legends, but denies the remainder of the allegations contained in paragraph 53.

54.     Denied, except that GSS admits that 17 C.F.R. §230.144(d)(1) requires the exchange of consideration in order for a shareholder to rely on the exemption from registration contained therein.

55.     GSS denies the allegations contained in paragraph 55.

56.     GSS admits that CCG is required to make certain filings with the SEC but denies the remainder of the allegations contained in paragraph 56.

57.     GSS denies the allegations contained in paragraph 57.

58.     GSS denies the allegations contained in paragraph 58.

59.     GSS denies the allegations contained in paragraph 59.

<u>**COUNT V**</u>
**(Accounting against All Defendants)**

60.     GSS repeats the answers heretofore stated.

61.     GSS denies that any sale of the CCG Shares would violate Federal Securities laws and further denies the remainder of the allegations contained in paragraph 61.

62.     GSS denies the allegations contained in paragraph 62.

63.     GSS denies the allegations contained in paragraph 63.

## AFFIRMATIVE DEFENSES

1.      CCG's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) to the extent the Complaint fails to state a claim on which relief may be granted.

2.      CCG's claims are barred by the doctrines of waiver, estoppel, laches and unclean hands.

3.      CCG's damages, if any, must be reduced by the doctrine of set-off.

4.      CCG's claims are barred by the doctrines of promissory estoppel and/or *contra proferentem*.

5.      GSS has fully performed its obligations under the Agreement in all material respects.  GSS has provided certain financial and other advisory services to CCG and thus, has fully earned the CCG Shares issued to GSS in accordance with the Agreement.

6.      CCG has failed to mitigate any alleged damages that it may have suffered as a result of the issuance of the Shares to GSS.

7.      CCG is estopped from asserting any claim for damages under the Agreement as it has failed to terminate the Agreement in accordance with paragraph 9 thereof.

8.      CCG has breached its obligations under the Agreement by failing to issue the required number of Shares to GSS or its designees.

9.      CCG is not entitled to injunctive relief because (a) it has an adequate remedy at law and will not be irreparably harmed; (b) has not, and cannot, establish that it is likely to succeed on the merits of this lawsuit; (c) the balance of harm incurred by the issuance of an injunction is greater to CCG than to GSS; and (d) there is no public interest furthered by granting CCG the relief that it seeks.

GSS reserves the right to amend its answer to assert additional affirmative defenses as additional information becomes available during the course and conduct of discovery.

**WHEREFORE**, GSS respectfully requests that the Court enter an Order in favor of GSS and against CCG as follows:

      a.  dismissing all counts of the complaint with prejudice;

      b.  denying CCG's request for injunctive relief;

      c.  awarding GSS reasonable attorneys fees and costs incurred in defending this action; and

      d.  granting such other and further relief as the Court deems fair, just and equitable.

<u>**COUNTERCLAIMS AGAINST CAR CHARGING GROUP, INC.**</u>
<u>**AND THIRD-PARTY CLAIM AGAINST WORLDWIDE STOCK TRANSFER, LLC**</u>

Garden State Securities, Inc., Daniel Walsh and Ernest Pellegrino, (collectively "GSS") for their counterclaims against Car Charging Group, Inc. and third-party claim against Worldwide Stock Transfer, LLC allege as follows:

1.      GSS is a New Jersey corporation, a registered broker/dealer with the U.S. Securities and Exchange Commission ("SEC") and a member firm of the Financial Industry Regulatory Authority ("FINRA"), with a principal place of business in Red Bank, New Jersey.

2.      Pellegrino is the executive managing director of GSS Capital Group, the investment banking division of GSS and works in GSS's Red Bank office.

3.      Walsh is a registered representative with GSS and an investment banking representative with GSS Capital Group and runs a branch office for GSS in Mineola, New York.

4.      CCG is a Nevada corporation with a principal place of business in Miami-Dade County Florida.  Upon information and belief, CCG is a development stage company that

acquires and installs electric vehicle charging stations. Its common stock is publicly traded in the Over-the-Counter ("OTC") market under the symbol "CCGI".

5. Worldwide Stock Transfer, LLC ("Worldwide") is a New Jersey corporation with a principal place of business located in Hackensack, New Jersey.  Worldwide served as CCG's transfer agent for all times relevant herein.

6. On September 13, 2012, GSS and CCG entered into a financial services advisory agreement (the "Agreement").

7. The Agreement provides, *inter alia*, that GSS is to perform the following services:

A. *Advisory Services*. As requested from time to time by the Company, GSS shall provide financial advisory services to the Company pertaining to the Company's business affairs.  Without limiting the foregoing, GSS will assist the Company in developing, studying and evaluating a financing plan, strategic and financial alternatives, and merger and acquisition proposals and will assist in negotiations and discussions pertaining thereto. Additionally, GSS will assist the Company in preparing an offering document or presentation materials describing the Company, its operations, its historical performance and future prospects.

B. GSS agrees to use its best efforts to make itself available to the Company's officers, at such mutually agreed upon place and time during normal business hours for reasonable periods of time for the purpose of advising and assisting the Company in preparing reports, summaries, corporate and/or transaction profiles, due diligence packages and/or other material and documentation as shall be necessary, in the opinion of GSS. Such availability will be subject to reasonable advance notice and mutually convenient scheduling.   In addition, GSS shall make its Investment Banking personnel available for telephone conferences with the Company's principal financial sales and/or operating officers during normal business hours upon reasonable advance notice and mutually agreed upon dates and times to assist with, and evaluate proposals.

GSS will use its best efforts to coordinate the introduction of the Company to one or more individuals, firms or other entities (the "Candidates") that may have an interest in pursuing some form of Business Combination with the Company and in analyzing, structuring, negotiating and effecting such a Business Combination.   As used in this letter, the term "Business Combination" means (i) any merger, consolidation, reorganization or other business combination pursuant to which any portion of the business of the

Company is combined with that of another entity, including without limitation any joint venture, licensing agreement, or product sale or marketing distribution agreement or (ii) the acquisition, directly or indirectly, of beneficial ownership of more than 50% of any class of capital stock of the Company or substantially all of the assets of the Company. Nothing contained herein shall be deemed or construed as an agreement by GSS to issue any "fairness opinion" with respect to a Business Combination. In the event that the Company desires GSS to issue a fairness opinion, the parties shall negotiate the terms of a separate agreement with respect thereto.

8.     GSS and/or its designees fully performed its obligations under the Agreement.

9.     On October 11, 2012, GSS arranged a three hour dinner meeting at a New York City restaurant wherein CCG president Michael Farkas ("Farkas") made a presentation of the company strategy to over 50 industry professionals, most of which attended pursuant to GSS's invitation.

10.     On September 27 and 28, 2012, GSS arranged conference calls between the law firm of Lucosky Bookeman LLP and Farkas to discuss the qualifications needed to have the shares listed on a more established, higher profile national trading exchange from the OTC Bulletin Board where the shares currently trade.

11.     On November 13, 2012, CCG gave a presentation at a New York City hotel attended by representatives of GSS who later arranged meetings with various industry professionals with whom GSS had contacts.

12.     On February 5, 2013, GSS arranged, traveled to and attended at their own expense, a lunch meeting with various industry professionals at a hotel in Miami Beach, Florida at which Farkas gave a presentation and showcased his relationship with the hotel by touring the charging stations owned and operated by CGI installed at the hotel.

13.     From September through November 2013, GSS personnel introduced CCG to Good Earth Energy Conservation, Inc. ("Good Earth").  GSS believed that Good Earth had many

synergies with CCG's business, since they are in the electric vehicle manufacturing business and would make a good business combination.

14.     As a direct result of this introduction, on November 12, 2013 CCG publicly announced that they formed a joint marketing effort with Good Earth. (*See* Exh. A (Press Release)).

15.     In consideration for the services rendered by GSS as described above, CCG was required to issue to GSS (or its designees) 550,000 restricted shares of common stock.

16.     CCG was required to issue to GSS 137,503 shares upon acceptance of the Agreement - September 13, 2012.

17.     Thereafter, CCG was required to issue an additional 45,833 shares on the first day of every month commencing on the fourth month from the date of the acceptance of the Agreement (January 13, 2013) through the twelfth month from the date of acceptance of the Agreement (August 13, 2013).

18.     The CCG shares vested on the latter of six months after the date of issuance or the date the shares could be sold under SEC Rule 144.

19.     When new shares are issued public companies are required to provide instructions to their transfer agents to issue the shares. Here, CCG instructed Worldwide Stock Transfer, LLC, its transfer agent, to issue share to GSS on at least four separate occasions. Upon information and belief, on each occasion CCG provide instructions to the transfer agent and represented that the shares have been validly issued, fully paid and non-assessable.

20.     On or about October 1 2012, in accordance with instructions provided by GSS, CCG issued the follow restricted shares: 27,500 shares to Garden State; 68,750 shares to Walsh and 41,253 shares to Pellegrino.

21.     Additionally, the Agreement required that CCG issue 45,833 shares of restricted common stock to GSS each month from January through May 2013. However, CCG only authorized three additional issuances of 45,833 shares on each of May 7, May 17 and June 19, 2013, and only after repeated requests from GSS to issue the required shares. These additional shares were only issued after CGI demanded that GSS accept all future share issuances as part of CGI's 2013 Omnibus Incentive Plan, to which GSS agreed.

22.     Moreover, despite due demand, CCG has failed to issue the final 137,499 shares due under the Agreement.

23.     At no time during the term of the Agreement, did CCG voice any concern about GSS's performance of its obligations thereunder, nor did Plaintiff terminate the Agreement pursuant to paragraph 9 of the Agreement.

24.     On or about July 27, 2014, GSS submitted a request to Worldwide, the transfer agent for CCG common shares, for the removal of the restrictive legends on each of GSS' stock certificates. The request was accompanied by the required documentation, including Broker Rule 144 letters, Customer Rule 144 Seller's Representation letters, and an opinion of counsel verifying that GSS had met the requirements of the Rule 144 exception from registration.

25.     Notwithstanding the submission of all required documentation and an opinion of counsel, Worldwide refused to remove the restrictive legends on the basis of CCG's improper instructions.

26.     Indeed, on or about August 4, 2014, Worldwide provided a transfer rejection form to GSS' clearing broker, RBC, rejecting the request for the removal of the restrictive legends from GSS' stock certificates, on the grounds that: "[t]he Shares were not earned, Company does not approve." (*See* Exh. B (Worldwide Transfer Rejection Form)).

27.     GSS fully performed its obligations under the Agreement and fully earned the shares that were issued.

28.     Moreover, GSS held all of its Shares for the required six month vesting period under the Agreement, and has satisfied the holding period requirements of Rule 144.

29.     Thus, GSS has satisfied each of the requirements to be eligible to sell their Shares in open market transactions pursuant to the exception under Rule 144.

30.     Companies that have publicly traded securities typically use transfer agents to maintain the stock books and records. Transfer agents handle such functions as the issuance and cancellation of certificates to reflect changes in stock ownership and handle lost, destroyed or stone certificates. Transfer agents must register with the Securities and Exchange Commission ("SEC") which has promulgated rules and regulations for all registered transfer agents, intended to facilitate the prompt and accurate clearance and settlement of securities transactions and that assure the safeguarding of securities and funds.

31.     Worldwide Stock Transfer, LLC ("Worldwide") is the transfer agent and registrar for CCG common stock. On or about July 27, 2014 GSS submitted twelve (12) certificates representing an aggregate of 412,501 CCG restricted common shares, along with Broker Rule 144 letters, customer Rule 144 Seller Representation letters and a legal opinion authorizing the removal of the restricted legends from all of the submitted certificates.

32.     Pursuant to rules and regulations promulgated by the SEC, transfer agents have certain time limitations within which they are required to perform certain tasks and functions. For items designated as "routine", the turnaround period is three (3) business days of receipt. For items considered to be non-routine, upon information and belief, the transfer agent is required to act within thirty (30) days of receiving instructions from the shareholder.

33.     In accordance with industry rules and standards, Worldwide had thirty (30) days to remove the restrictive legends from GSS's stock certificates absent a Court order preventing them to do so.

34.     Yet, CCG directed Worldwide not to remove the restrictive legends from GSS' stock certificates more than two months before obtaining an *ex parte* restraining order prohibiting the removal of the legend.

35.     CCG had been previously provided the transfer agent with instructions to issue the share certificates to GSS. In so doing, CGI represented to Worldwide that the shares have been validly issued, fully paid and non-assessable. These instructions are inopposite of the claims by CGI against GSS that the restrictive legends cannot be removed from the certificates because the "shares were not earned".

36.     Worldwide failed to remove the restrictive legends from the stock certificates presented by GSS after thirty days from presentation even though all required documents were submitted accompanied by a legal opinion letter. In refusing to remove the restrictive legends from the certificates, GSS has been and continues to be unable to sell its shares in the open market and remain at market risk due to the nature of the fluctuating price of the shares.

37.     As a direct and proximate result of its Worldwide' s improper conduct, GSS has been damaged in an amount to be determined at trial, plus pre- and post-judgment interest and reasonable attorneys fees and costs of suit in defending this action.

38.     By blocking the removal of the restrictive legends on the GSS stock certificates based upon the pretextual basis that the shares were "not earned," CCG is tortuously interfering with GSS' ability to sell their Shares. As a direct result, CCG is artificially inflating the market price for its common stock by interfering with shareholders' ability to execute transactions of

CCGI stock in the marketplace, in violation of Section 10b of the Securities Exchange Act of 1934, as amended, and SEC Rule 10b-5 thereunder.

## FIRST COUNT
### (Breach of Contract as against CCG)

39.    GSS repeats the allegations heretofore stated.

40.    Under the Agreement, CCG was required to issue 550,000 shares of restricted common stock to GSS and/or its designees, in exchange for the services GSS rendered.

41.    Although GSS has performed its obligations under the Agreement, CCG has only issued 412,501 shares - - leaving a balance of 137,499 shares due and owing - - and has improperly directed its transfer agent not to remove the restrict legend from the shares in order to prevent GSS from selling its shares. CCG has improperly refused to authorize the removal of the restrictive legend on GSS' shares.

42.    As a direct and proximate result of CCG's refusal to lift the restrictive legends from the certificates representing the 412,501 shares previously issued to GSS, as well as CCG's refusal to issue the additional 137,499 shares due and owing to GSS under the Agreement, CCG has breached the Agreement. GSS has been damaged in an amount to be determined at trial, plus pre- and post-judgment interest and reasonable attorney's fees and costs of suit in defending this action.

## SECOND COUNT
### (Specific Performance as against CCG)

43.    GSS repeats the allegations heretofore stated.

44.    GSS has fully performed its contractual obligations under the Agreement.

45.     Pursuant to the express terms of the Agreement, CCG was required to tender to GSS shares of common stock upon consummation of the Agreement and in eight equal monthly installments thereafter.

46.     Despite its clear and ambiguous contractual obligations, CCG has failed to tender the remaining 137,499 shares of common stock due and owing to GSS.

47.     Accordingly, the Court should enter specific performance of CCG's obligations under the Agreement by requiring delivery of these securities and the lifting of any restrictive legend thereon.

**THIRD COUNT**
**(Unjust Enrichment as against CCG)**

48.     GSS repeats the allegations heretofore stated.

49.     CCG has inexplicably refused to issue the required number of restricted shares to GSS pursuant to the Agreement despite its clear contractual obligation to do so.

50.     CCG has been unjustly enriched by obtaining the advisory services performed by GSS without having paid any fees or permitting GSS to derive any benefit from the shares that have been issued and the additional shares that should have been issued.

51.     CCG has also benefitted by having a small number of issued and outstanding shares of common stock for which it is required to take a charge in its financial statements.

52.     Moreover, as a direct and proximate result of its refusal to issue the additional 137,499 shares to GSS, CCG has been unjustly enriched to the financial detriment of GSS, which equity and good conscience require be disgorged.

**FOURTH COUNT**
**(Violation of Section 10b of the Securities Exchange Act of**
**1934 as amended and Rule 10b-5 thereunder as against CCG)**

53.     GSS repeats the allegations heretofore stated.

54.     Section 10b of the Securities Exchange Act of 1934 (the "Act") forbids the use or employment of any deceptive device in connection with the purchase or sale of any security. SEC Rule 10b-5 forbids, among other things, the making of any untrue statement of material fact or the omission of any material fact in the purchase or sale of any security.

55.     CCG made an untrue statement of material fact to its transfer agent by falsely claiming that GSS had not earned the shares that were issued to it pursuant to the Agreement.

56.     CCG did so knowingly, intentionally and for the sole purpose of impairing GSS' ability to sell the Shares on the open market.

57.     CCG's interference with the potential sale of 412,501 validly issued shares of its common stock has also had the effect of artificially inflating the market price of CCG stock.

58.     As a result, CCG has, and continues to manipulate the price of its common stock in violation of Section 10b of the Act and Rule 10b-5 thereunder.

59.     As a direct and proximate result of its CCG's improper conduct, GSS has been damaged in an amount to be determined at trial, plus pre- and post-judgment interest and reasonable attorneys' fees and costs of suit in defending this action.

## FIFTH COUNT
### (Breach of Fiduciary Duty as against Worldwide)

60.     GSS repeats the allegations heretofore stated.

61.     As the registered transfer agent of CGI, Worldwide owes a fiduciary duty to all shareholders, including GSS, to perform its tasks and responsibilities properly and professionally, and in conformity with applicable rules and regulations.

62.     Worldwide breached this duty to GSS by failing to remove the restrictive legends from the twelve share certificate submitted by GSS, even though all required conditions were met for the removal of the legends pursuant to SEC Rule 144.

63.     Worldwide's failure to act has prevented GSS from selling its shares of CCG stock into the market, and realizing the financial results of those sales. In addition, GSS remains at risk of the market and the fluctuating price of CCG common stock.

64.     As a direct and proximate result of Worldwide's breach of the covenant of good faith and fair dealings that it owes to all shareholders, GSS has been damaged in an amount to be determined at trial, plus pre- and post-judgment interest and reasonable attorneys' fees and costs of suit in defending this action.

## SIXTH COUNT
### (Tortious Interference as against Worldwide)

65.     GSS repeats the allegations heretofore stated.

66.     Pursuant to its obligations to its customers which are the shareholders of the various companies for which Worldwide serves as transfer agent, Worldwide was required to remove the restrictive legends from the twelve certificates submitted by GSS.

67.     Despite its clear and ambiguous responsibilities, Worldwide has failed to remove the restrictive legends from the twelve share certificates for an aggregate of 412,501 shares submitted by GSS.

68.     In so doing, Worldwide continues to tortuously interfere with GSS' ability to sell its shares into the market place thereby interfering with its contractual relationship with CCG.

69.     As a direct and proximate result of Worldwide's refusal to lift the restrictive legends from the certificates representing the 412,501 shares previously issued to GSS, GSS has been damaged in an amount to be determined at trial, plus pre- and post-judgment interest and reasonable attorneys' fees and costs of suit in defending this action.

## DEMAND FOR RELIEF

**WHEREFORE**, GSS demands that the Court enter judgment in its favor and against CCG and Worldwide, jointly and severally, as follows:

1.      on all cause of action, awarding GSS compensatory damages in the amount to be determined at trial plus pre- and post-judgment, compelling Worldwide to lift the restrictive legend on the 412,501 shares previously issued to GSS;

2.      attorneys' fees and costs of suit pursuant to the Agreement; and

3.      such other, further and different relief as the Court deems just and proper.


Dated: New York, New York           **BECKER & POLIAKOFF LLP**
      October 28, 2014


By:    */s/ Robert I. Rabinowitz*
       Robert I. Rabinowitz, Esq.
       Vincenzo M. Mogavero, Esq.
       45 Broadway, 8th Floor
       New York, New York 10006
       (212) 599-3322
       *Attorneys for GSS*
       rrabinowitz@bplegal.com
       vmogavero@bplegal.com